**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | **Chapter 11** |
| *In re* | : | |
| | : | **Case No. 18-11699 (MFW)** |
| **THE NORDAM GROUP, INC., *et al.*,** | : | |
| | : | **(Jointly Administered)** |
| **Debtors.**[1] | : | |
| | : | **Hr'g Date: March 27, 2019 at 11:30 a.m. (ET)** |
| | | **Obj. Deadline: March 5, 2019 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF ORDER (I) EXTENDING DEBTORS' EXCLUSIVE PERIODS TO PROPOSE AND SOLICIT PLAN AND (II) GRANTING RELATED RELIEF**

The NORDAM Group, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1. Since the last extension of the Debtors' exclusive periods to file and solicit a chapter 11 plan, the Debtors have made substantial progress towards emerging from these chapter 11 cases. Specifically, the Debtors have engaged J.P. Morgan Chase Bank, N.A. ("**J.P. Morgan**") as the Debtors' sole and exclusive arranger to secure and syndicate approximately $240 million of exit financing (the "**Exit Facilities**") and are in the final stages of their process to raise additional equity to facilitate transactions contemplated under the *First Amended Joint Postpackaged Chapter 11 Plan of Reorganization of The NORDAM Group, Inc. and Its Debtor Affiliates* (the "**Plan**," ECF No. 848). The Plan contemplates paying all creditors in full and the *Disclosure Statement for the First Amended Joint Postpackaged Chapter 11 Plan of*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are The NORDAM Group, Inc. (7803); Nacelle Manufacturing 1 LLC (3107); Nacelle Manufacturing 23 LLC (5528); PartPilot LLC (5261); and TNG DISC, Inc. (9726). The Debtors' corporate headquarters and service address is 6910 North Whirlpool Drive, Tulsa Oklahoma 74117.

*Reorganization of The NORDAM Group, Inc. and Its Debtor Affiliates* (the "**Disclosure Statement**," ECF No. 849) has been conditionally approved and distributed to parties entitled to vote in accordance with an order of the Court approving solicitation procedures and establishing a confirmation schedule (the "**Conditional Approval Order**," ECF No. 838).  At this juncture, the Debtors intend to use a short further extension of the exclusive periods to April 15, 2019 and June 17, 2019, respectively, to complete their restructuring.

2. Accordingly, by this Motion, and pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request a 56-day extension of the exclusive period within which they have the exclusive right to propose a plan under sections 1121(b) and 1121(c)(2) of the Bankruptcy Code from February 18, 2019 to April 15, 2019 and a 60-day extension to solicit a plan under section 1121(c)(3) of the Bankruptcy Code from April 18, 2019 to June 17, 2019 (collectively, the "**Exclusive Periods**"), without prejudice to seek additional extensions for cause shown.

3. An extension of the Exclusive Periods in these chapter 11 cases is appropriate, is in the best interest of the Debtors' economic stakeholders, and is consistent with the intent of chapter 11 of the Bankruptcy Code.  Ample cause exists to extend the Exclusive Periods for this relatively short period of time because, among other reasons, the Debtors are close to finalizing all of the elements required to perform under the Plan and proceeding towards emergence.  The requested extension of the Exclusive Periods at this juncture will not prejudice any party in interest, and instead will promote the Debtors' ability to maximize value for their estates and successfully emerge from chapter 11 in the near term.

**Jurisdiction**

4. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

5. On July 22, 2018 (the "**Petition Date**"), the Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 1, 2018, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases. The Debtors' cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

6. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of John C. DiDonato In Support of Debtors' Chapter 11 Petitions and First Day Relief* (ECF No. 3).


7. On December 27, 2018, the Court entered an order extending the exclusive plan filing period to February 18, 2019 and extending the exclusive plan solicitation period to April 18, 2019.

**Basis for Requested Relief**

8. Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). The Debtors may seek extension of the Exclusive Periods any time during the Exclusive Periods.[2]

9. The Bankruptcy Code leaves the term "cause" undefined for purposes of section 1121(d). However, the legislative history of section 1121 indicates that such term should be viewed flexibly "to allow the debtor to reach an agreement" with parties in interest. H.R. Rep. No. 95-595, at 232 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6191; *see also In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1998) ("[t]he legislative intent has been construed to leave the question [of whether to extend the Exclusive Periods] to the reorganization court in the exercise of its discretion and to promote maximum flexibility to suit various types of reorganization proceedings.") (citation omitted).

10. In determining whether cause exists to extend plan exclusivity, a bankruptcy court generally considers a variety of factors, including:

a) the size and complexity of the [debtor's] case;

[2] *See* Local Rule 9006-2 ("If a motion to extend the time to take any action is filed before the expiration of the period prescribed by the [Bankruptcy Code, Bankruptcy Rules, or Local Rules] or Court order, the time shall automatically be extended until the Court acts on the motion, without necessity for the entry of a bridge order."); *see also In re CPM Energy Sys., Inc.*, 103 B.R. 508, 508 (Bankr. D. Del. 1989) (noting that an extension request made on the 119th day of the original 120–day period established by statute was timely).

      b) the necessity of sufficient time [to permit the debtor] to negotiate [a chapter 11 plan] and prepare adequate information;

c) the existence of good faith progress [towards reorganization];

d) whether the debtor is paying its debts as [they] become[] due;

e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f) whether the debtor has made progress negotiating with creditors;

g) the length of time a case has been pending;

h) whether the debtor is seeking an extension to pressure creditors; and

i) whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC,* 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011).

11. Not all factors are relevant to every case and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors."); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity).

12. As demonstrated herein, ample cause exists to grant the requested extension of the Exclusive Periods. The Debtors continue to successfully prosecute a chapter 11 plan that contemplates paying creditors in full and that will infuse the Debtors' reorganized

enterprise with hundreds of millions of dollars in new capital upon emergence. The brief extension requested here will afford the Debtors the time required to complete the few remaining steps—conducting a confirmation hearing and preparing to consummate the plan—to successfully conclude these chapter 11 cases.

**A. Debtors Continue to Make Good Faith Progress Towards Reorganization**

13. There can be no question that the Debtors have continued making good-faith significant progress in furtherance of reorganization under chapter 11. As stated, the Debtors have retained J.P. Morgan as their exclusive arranger to syndicate the Exit Facilities and are in the final stages of negotiating definitive documents for use in the syndication process. The Debtors and their advisors also have spent considerable time conducting a comprehensive marketing process for potential providers of equity capital. After soliciting interest from numerous entities, the Debtors are also in the final stage of raising additional equity capital to facilitate their emergence.

14. In connection with both the debt and equity financing process, the Debtors and their advisors have devoted significant time and expense over the past few months providing potential financing providers with the due diligence necessary to finalize definitive documents. All of the foregoing are necessary to the Debtors' performance under the Plan, and will benefit the Debtors' estates and stakeholders.

**B. Debtors' Cases Are Large and Complex**

15. The large size and complexity of a debtor's case can support an extension of the Exclusive Periods. *See, e.g., In re Texaco Inc.,* 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of [a] debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which

generally constitute cause for extending the exclusivity periods.") (citation omitted); *see also* H.R. Rep. No. 95-595.

16. The Debtors' chapter 11 cases qualify as large and complex. Specifically, given the significant capital involved along with the size and structure of the Debtors' operations, negotiations of the Exit Facilities and equity commitment is particularly complex and touches legal and business issues relating to, among other things, corporate governance, minority shareholder protections, antitrust issues, tax structures, and other similar issues. The Debtors and their advisors continue negotiating with their exit debt and equity capital providers on resolving these issues and expeditiously documenting the terms and structure thereof in the transaction documents.

17. From an operational perspective, the Debtors continue to evaluate the treatment of over 1,800 executory contracts and leases and recently rejected an airplane lease (ECF No. 551) while continuing to work with the lessors of nonresidential real property leases to consensually treat their respective lease. The requested extension of the Exclusive Periods simply allows these chapter 11 cases to continue in an efficient and efficacious manner and preserve enterprise value, and is consistent with the intent and purpose of section 1121 of the Bankruptcy Code.

**C. Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to Debtors' Demands**

18. The Debtors are not seeking to extend the Exclusive Periods to pressure creditors. Instead, the Debtors are successfully managing an inclusive and collaborative process. This constructive relationship is evidenced by the limited number of contested issues that have required intervention by the Court, the Debtors' ongoing constructive relationship with their secured lenders and the Creditors' Committee, and the fact that the Plan contemplates paying all

creditors in full. The requested extensions simply recognize what remains to be accomplished in these cases in light of the status of the Debtors' ongoing negotiations with exit financing providers.

**D. Debtors Are Paying Required Postpetition Administrative Expenses as They Come Due and Have the Ability to Continue Doing So**

19. Courts considering an extension of exclusivity also consider a debtor's ability to pay administrative expenses. *See In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 752 (Bankr. M.D. Tenn. 2000). Here, with access to postpetition financing and operating cash, the Debtors have more than sufficient liquidity, are in fact paying administrative expenses as they come due, and can and will continue doing so throughout the entirety of the requested extended periods.

**Conclusion**

20. The Debtors have demonstrated that they are working diligently to advance the reorganization process and should be granted the time necessary to complete solicitation and finalize the necessary documents for confirmation of the Plan as contemplated by section 1121 of the Bankruptcy Code. Under these circumstances, the second modest extension of the Exclusive Periods as requested in this Motion is plainly justified to afford the Debtors with the opportunity to achieve the objectives of chapter 11 on a fully consensual basis.

**Notice**

21. Notice of this Motion will be provided to (a) the Office of the U.S. Trustee; (b) Morrison & Foerster LLP, as counsel to the Creditors' Committee; (c) JPMorgan Chase Bank, N.A. as administrative agent for the Debtors' prepetition and postpetition secured lenders; (d) Simpson Thacher & Bartlett LLP, as counsel to JPMorgan Chase, N.A.; (e) the Internal Revenue Service; (f) the United States Attorney's Office for the

District of Delaware; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (h) non-Debtor parties to any Civil Actions (collectively, the "**Notice Parties**"). The Debtors believe that no further notice is required. Other than the request that resulted in the first extension of the Removal Deadline, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 17, 2018
      Wilmington, Delaware

                              */s/ Brett Haywood*
                              RICHARDS, LAYTON & FINGER, P.A.
                              Daniel J. DeFranceschi (No. 2732)
                              Paul Heath (No. 3704)
                              Brett M. Haywood (No. 6166)
                              Megan E. Kenney (No. 6426)
                              One Rodney Square
                              920 N. King Street
                              Wilmington, Delaware 19801
                              Telephone:  (302) 651-7700
                              E-mail:  DeFranceschi@rlf.com
                                                    Heath@rlf.com
                                                    Haywood@rlf.com
                                                    Kenney@rlf.com

                              -and-

                              WEIL, GOTSHAL & MANGES LLP
                              Ray C. Schrock, P.C. (admitted *pro hac vice*)
                              Ryan Preston Dahl (admitted *pro hac vice*)
                              Jill Frizzley (admitted *pro hac vice*)
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              E-mail:  Ray.Schrock@weil.com
                                                    Ryan.Dahl@weil.com
                                                    Jill.Frizzley@weil.com

                              *Attorneys for Debtors*
                              *and Debtors in Possession*