# Exhibit 1

**Amendment**

# AMENDMENT NO. 2 TO SENIOR SECURED, SUPER PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS AMENDMENT NO. 2 TO SENIOR SECURED, SUPER PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Amendment"), is made and entered into as of February 22, 2019 (the "Amendment Effective Date"), by and among THE NORDAM GROUP, INC., a Delaware corporation (the "Borrower"), each of the undersigned Guarantors, each of the Lenders executing this Amendment, and JPMORGAN CHASE BANK, N.A., as Administrative Agent.

W I T N E S S E T H:

WHEREAS, The Borrower, the Lenders therein identified and JPMorgan Chase Bank, N.A., as Administrative Agent, are parties to that certain Senior Secured, Super Priority Debtor-In-Possession Credit Agreement dated as of July 25, 2018 (as heretofore amended, supplemented or otherwise modified, the "Credit Agreement" and as amended by this Amendment, the "Amended Credit Agreement");

WHEREAS, pursuant to the Credit Agreement, the Lenders have agreed to make, and have made, certain loans and other extensions of credit to the Borrower;

WHEREAS, pursuant to the Credit Agreement, the Borrower is required to comply with a milestone that (a) within 215 days of the Petition Date, the Bankruptcy Court shall have entered an order in form and substance reasonably satisfactory to the Administrative Agent and Required Lenders confirming the Acceptable Plan and that (b) within 245 days of the Petition Date, the effective date with respect to the Acceptable Plan shall have occurred;

WHEREAS, the Borrower has requested that the Required Lenders agree to amend the Credit Agreement to extend such milestones, as more fully described herein;

WHEREAS, the Borrower, the Required Lenders, and the Administrative Agent are willing to agree to such amendment on the terms set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are acknowledged by the parties hereto, the parties agree to amend the Credit Agreement in accordance with Section 10.01 thereof as follows:

1. DEFINITIONS. Unless otherwise defined herein, terms defined in the Credit Agreement (as amended pursuant to Section 2 below) and used herein have the meanings given to them in the Credit Agreement.

2. AMENDMENTS TO CREDIT AGREEMENT. The Credit Agreement is hereby amended, effective as of the Amendment Effective Date, as follows:

   2.1. The following defined term shall be added to Section 1.01 of the Credit Agreement in the appropriate alphabetical order:

"Second Amendment Effective Date" shall have the meaning specified in Section 2.09(d).

2.2. Schedule 6.23 of the Credit Agreement is hereby amended by deleting "within 215 days from the Petition Date" in item (c) thereto and inserting in lieu thereof "on or before March 18, 2019".

2.3. Schedule 6.23 of the Credit Agreement is hereby amended by deleting "within 245 days from the Petition Date" in item (d) thereto and inserting in lieu thereof "on or before March 29, 2019".

2.4. Section 2.09 of the Credit Agreement is hereby amended by inserting a new paragraph (d) at the end thereof as follows:

"(d) The Borrower shall pay to the Administrative Agent, for the account of each Lender in accordance with its Applicable Percentage, a fee equal to 1.25% of the Revolving Commitment in effect on the effective date of the Second Amendment, dated as of February 22, 2019, to this Agreement (the "Second Amendment Effective Date").  Such fee shall be fully earned on the Second Amendment Effective Date and shall be paid as follows:  (i) 0.25% of the Revolving Commitment payable on the Second Amendment Effective Date and (ii) 1.00% of the Revolving Commitment payable on March 29, 2019 only if the effective date with respect to an Acceptable Plan shall have not occurred on or before March 29, 2019 (it being understood and agreed that if the effective date with respect to an Acceptable Plan occurs on or before March 29, 2019, the fee in the foregoing clause (ii) shall not be payable). The foregoing fees once paid shall not be refundable for any reason whatsoever and shall be in addition to any other amounts due and payable under this Agreement or any other Loan Document.".

3. CONDITIONS PRECEDENT. This Amendment shall be effective as of the Amendment Effective Date, but only when each of the following conditions precedent has been satisfied:

3.1. The Administrative Agent (or its counsel) shall have received (i) duly executed and completed counterparts (in the form provided and specified by the Administrative Agent) that, when taken together, bear the signatures of each of the Borrower, the Guarantors and the Administrative Agent and (ii) Lender Addenda in the form of Annex I hereto (each a "Lender Addendum" and collectively, "Lender Addenda"), executed and delivered by Required Lenders;

3.2. The Borrower's payment of all reasonable fees, costs, expenses, charges and disbursements of counsel and other advisors to the Administrative Agent and all reasonable fees, costs, expenses, charges and disbursements of counsel and other advisors to any of the Lenders incurred in connection with the negotiation and preparation of the Amendment, in each case, to the extent invoiced prior to or on the Amendment Effective Date.

3.3. No Default or Event of Default shall have occurred and be continuing under the Credit Agreement; and

    3.4. The Borrower shall have paid the fee required under Section 2.09(d) of the Credit Agreement.

The execution of this Amendment shall conclusively be deemed to constitute an acknowledgment by the Administrative Agent and each Lender party hereto and that each of the conditions precedent set forth in this Section 3 shall have been satisfied in accordance with its respective terms or shall have been irrevocably waived by such Person.

4. <u>REPRESENTATIONS AND WARRANTIES</u>. The Borrower represents and warrants to each of the Lenders and the Administrative Agent that as of the Amendment Effective Date:

    4.1. This Amendment has been duly authorized, executed and delivered by it and this Amendment and the Amended Credit Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms.

    4.2. Each of the representations and warranties made by it in the Credit Agreement with respect to itself and the other Loan Parties are true and correct in all material respects (provided that any such representations and warranties which are qualified by materiality, material adverse effect or similar language shall be true and correct in all respects) on and as of the Amendment Effective Date with the same effect as though made on and as of the Amendment Effective Date (other than those representations and warranties that expressly relate solely to a specific earlier date, in which case such representations and warranties shall have been true and correct in all material respects (provided that any such representations and warranties which are qualified by materiality, material adverse effect or similar language shall be true and correct in all respects) as of such earlier date.

5. <u>EFFECT OF AMENDMENT</u>.

    5.1. Except as expressly set forth herein, (i) this Amendment shall not by implication or otherwise limit, impair, constitute a waiver of or otherwise affect the rights and remedies of the Lenders or the Administrative Agent under the Amended Credit Agreement or any other Loan Document, and shall not alter, modify, amend or in any way affect any of the terms, conditions, obligations, covenants or agreements contained in the Amended Credit Agreement or any other provision of the Amended Credit Agreement or of any other Loan Document, all of which are ratified and affirmed in all respects and shall continue in full force and effect and (ii) nothing herein shall be deemed to entitle any Loan Party to a consent to, or a waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants or agreements contained in the Amended Credit Agreement or any other Loan Document in similar or different circumstances.

    5.2. Each Loan Party agrees that (i) all of its obligations, liabilities and indebtedness under such Loan Document, including guarantee obligations, shall remain in full force and effect on a continuous basis after giving effect to this Amendment; (ii) all of the Liens and security interests created and arising under such Loan Documents remain in full force and effect on a continuous basis, and the perfected status and priority of each such Lien and security interest continues in full force and effect on a continuous basis, unimpaired, uninterrupted and undischarged, after giving effect to this Amendment as collateral

3

security for its obligations, liabilities and indebtedness under the Amended Credit Agreement and under its guarantees in the Loan Documents; and (iii) all Obligations under the Loan Documents are payable or guaranteed, as applicable, by each of the Loan Parties in accordance with the Amended Credit Agreement and the other Loan Documents, and each Loan Party unconditionally and irrevocably waives any claim or defense in respect of the Obligations existing on, or arising out of facts occurring at any time on or prior, to the Amendment Effective Date, including, without limitation, any claim or defense based on any right of set off or counterclaim and hereby ratifies and affirms each and every waiver of claims and defenses granted under the Loan Documents.

5.3. The Amended Credit Agreement, as amended, modified and supplemented by this Amendment, shall continue in full force and effect in accordance with its terms and is hereby reaffirmed in every respect as of the date hereof. On and after the Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein", or words of like import, and each reference to the Credit Agreement in any other Loan Document shall be deemed a reference to the Amended Credit Agreement. This Amendment shall constitute a "Loan Document" for all purposes of the Amended Credit Agreement and the other Loan Documents.

6. MISCELLANEOUS.

    6.1. Counterparts. This Amendment may be executed in any number of multiple counterparts, all of which taken together shall constitute one and the same instrument. Delivery by any party of an executed counterpart of a signature page to this Amendment by telecopier or by electronic communication in portable document format (PDF) shall be effective as delivery of a manually executed counterpart hereof and shall constitute an agreement of such party to promptly deliver such original executed counterpart signature page(s) as deemed appropriate by the Administrative Agent.

    6.2. Descriptive Headings. The descriptive headings of the several paragraphs of this Amendment are inserted for convenience only and shall not be used in the construction of the content of this Amendment.

    6.3. RELEASE. EACH OF THE BORROWER AND THE GUARANTORS HEREBY ACKNOWLEDGE THAT THE OBLIGATIONS UNDER THE AMENDED CREDIT AGREEMENT AND EACH OTHER LOAN DOCUMENT EXECUTED IN CONNECTION THEREWITH ARE ABSOLUTE AND UNCONDITIONAL WITHOUT ANY RIGHT OF RESCISSION, SETOFF, COUNTERCLAIM, DEFENSE, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE OBLIGATIONS UNDER THE CREDIT AGREEMENT AND EACH OTHER LOAN DOCUMENT EXECUTED IN CONNECTION THEREWITH OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM ANY RELEASED PARTY (AS DEFINED BELOW). EACH OF THE BORROWER AND THE GUARANTORS HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES THE ADMINISTRATIVE AGENT, EACH LENDER, EACH RELATED PARTY TO

ANY OF THE ABOVE, AND ALL AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, COUNSEL, AGENTS, ATTORNEYS-IN-FACT, SUCCESSORS AND ASSIGNS OF THE FOREGOING (COLLECTIVELY, THE "RELEASED PARTIES"), FROM ALL CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AMENDMENT IS EXECUTED, WHICH THE BORROWER OR ANY GUARANTOR MAY NOW OR HEREAFTER HAVE AGAINST THE RELEASED PARTIES, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISING OUT OF OR IN CONNECTION WITH OR BY REASON OF THE AMENDED CREDIT AGREEMENT OR ANY OTHER LOAN DOCUMENT EXECUTED IN CONNECTION THEREWITH, INCLUDING, WITHOUT LIMITATION, ANY CONTRACTING FOR, CHARGING, TAKING, RESERVING, COLLECTING OR RECEIVING INTEREST IN EXCESS OF THE HIGHEST LAWFUL RATE APPLICABLE, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE CREDIT AGREEMENT OR ANY OTHER LOAN DOCUMENT EXECUTED IN CONNECTION THEREWITH, AND NEGOTIATION FOR AND EXECUTION OF THIS AMENDMENT.

6.4. GOVERNING LAW. EXCEPT TO THE EXTENT COVERED BY THE BANKRUPTCY CODE, THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICT OF LAWS) PROVISIONS OF THE STATE OF NEW YORK; PROVIDED, THAT THE ADMINISTRATIVE AGENT AND THE LENDERS SHALL RETAIN ALL RIGHTS ARISING UNDER FEDERAL LAW.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK.**

**SIGNATURES APPEAR ON FOLLOWING PAGES.**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their respective authorized officers as of the day and year first above written.

**BORROWER**

THE NORDAM GROUP, INC.,
a Delaware corporation

By: _____
Name: John DiDonato
Title: Chief Restructuring Officer

**GUARANTORS**

TNG DISC, INC., a Delaware corporation

By: _____
Name: John DiDonato
Title: Chief Restructuring Officer

NACELLE MANUFACTURING 1 LLC,
a Delaware limited liability company

By:   The NORDAM Group, Inc.,
      its sole member-manager

      By: _____
      Name: John DiDonato
      Title: Chief Restructuring Officer

NACELLE MANUFACTURING 23 LLC,
a Delaware limited liability company

By:   The NORDAM Group, Inc.,
      its sole member-manager

      By: _____
      Name: John DiDonato
      Title: Chief Restructuring Officer

[*Signature Page – Amendment No. 2 to the DIP Credit Agreement*]

PARTPILOT LLC,
a Delaware limited liability company

By: _____
Name: John DiDonato
Title: Chief Restructuring Officer